UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

TERRY BRYANT                                      Case No.: 13-26650-PGH
aka Terry Ray Bryant                         Chapter 13

      Debtor.
_____/

## EX-PARTE MOTION TO APPROVE LOAN MODIFICATION AGREEMENT BETWEEN GREEN TREE SERVICING LLC AND DEBTOR

COMES NOW Creditor, Green Tree Servicing LLC (MOVANT) and files this Motion to Approve Loan Modification Agreement between Green Tree Servicing LLC and Debtor, and as grounds therefor states:

1. Movant is a secured creditor holding a secured claim against the Debtor's Note and Mortgage, more particularly described as:

    **REAL PROPERTY AT:** 915 39th St. West Plam Beach, FL 33407**, AND MORE ACCURATELY DESCRIBED BY ITS LEGAL DESCRIPTION WHICH IS:**

    LOT 7, PLAT NO. 1 LAKE CLARKE, ACCORDING TO THE PLAT RECORDED IN PLAT BOOK 27, PAGE 249, AS RECORDED IN THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

2. The Debtor filed the instant Chapter 13 Bankruptcy on July 16, 2013.

3. The Movant and the Debtor have agreed to and signed the Loan Modification Agreement, **Exhibit A**, subject this Court's approval.

4. The Loan Modification Agreement is in the best interest of the parties.

5. The general terms of the agreement are as follows:

   a. Principal balance: $84,531.86;

   b. Interest rate: 4.625% fixed;

   c. Principal and interest payments of $318.40 for 480 months;

   d. The first monthly payment is due on October 1, 2014 in the amount of $318.40, which includes, principal and interest; and

WHEREFORE, Movant requests that this Honorable Court enter its order granting the Motion to Approve Loan Modification Agreement between Green Tree Servicing LLC and Debtor.

Respectfully submitted,

/S/ Evan S. Singer

_____

Evan S. Singer
Fla. Bar ID: 101406
Timothy D. Padgett, P.A.
6267 Old Water Oak Road
Suite 203
Tallahassee, Florida 32312
(850) 422-2520 (telephone)
(850) 422-2567 (fax)
ess@padgettlaw.net

CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 3rd day of December, 2014, a true and correct copy of the foregoing was served by U.S. Mail, First Class, and/or electronic transmission to:

Debtor
Carols E. Alvarado
14639 Garden Dr.
Miami, FL 33168

Attorney for Debtor
Andrew M. Bellinson, Esq.
10800 Biscayne Blvd. #925
Miami, FL 33161

Trustee
Nancy K. Neidich
Post Office Box 279806
Miramar, FL 33027

U.S. Trustee
Office of the U.S. Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

              /s/ Evan S. Singer, Esq.

              Evan S. Singer, Esq.

Investor Loan #

**When Recorded Return To:**
Green Tree Servicing LLC
7360 South Kyrene Road
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] _____

# LOAN MODIFICATION AGREEMENT

*From 1st MTG SAFE EP*

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOUR LOAN WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, GREEN TREE IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY. Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST**

This Loan Modification Agreement ("Agreement"), made between TERRY RAY BRYANT ("Borrower") and Green Tree Servicing LLC ("Lender"), amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 10/25/2001 and recorded 12/15/2001 Instrument No. 20010559501 Book 13198 Page 1536 of the Records of PALM BEACH COUNTY, FL and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

915 39TH ST WEST PALM BEACH, FL 33407
New Modified Amt. $84,531.86 Unpaid Principal Balance $73,065.02 New Money $11,466.84

**ORIGINAL**

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 09/01/2014, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $84,531.86 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. $14,956.86 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $69,575.00. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.62500%, from 09/01/2014. Borrower promises to make monthly payments of principal and interest of U.S. $318.40, beginning on the 10/01/2014, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 4.62500% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new monthly payment amount does not include any amounts owed for escrow. Borrower may refer to the monthly billing statement for the escrow amount owed. The new Maturity Date will be 09/01/2054. Borrower's payment schedule for the modified Loan is as follows:

LOAN MODIFICATION AGREEMENT-Single Family-Fannie Mae UNIFORM INSTRUMENT                Form 3179  1/01(rev. 01/09)

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-40 | 4.625% | 09/01/2014 | $318.40 | 10/01/2014 | 480 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

6. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

7. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

8. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

   (e) Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC
Lender
By: _____
Susanne F. Roman
Licensed Loss Mitigation Specialist
License Number: 820539
Name: Brian A Abbee
Title: Default Services Supervisor
License #: 68000

*[Signature: Terry L Bryant]*
TERRY RAY BRYANT    Oct 3, 2014
Date

Date    OCT 09 2014

Account#:

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

STATE OF _Florida_,                                         County ss: _Palm Beach_

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared

TERRY RAY BRYANT

who is (personally known) to me or who has produced _____
as positive identification, and who executed the foregoing instrument and acknowledged before me that _HE_ executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this _3rd_ day of _October_, 20_14_.

My Commission Expires: _____

_Beverly Corey Dickerman_
Notary Public

BEVERLY COREY DICKERMAN
MY COMMISSION # EE868357
EXPIRES: February 28, 2017

ACKNOWLEDGMENT

STATE OF: Arizona,

County ss: Maricopa,

On this day of _____ OCT 09 2014 _____, before me, the undersigned, a Notary Public in and for said state, personally appeared

Susanne F. Roman, Licensed Loss Mitigation Specialist of Green Tree Servicing LLC

Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.



BRIAN A. ABBEE
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires Oct. 15, 2016

Notary Public

Exhibit "A"

LOT 7, PLAT NO. 1 LAKE CLARKE, ACCORDING TO THE PLAT RECORDED IN PLAT BOOK 27, PAGE 249, AS RECORDED IN THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.